| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:14-CR-53(1) |
| | § | |
| CYRUS GHARIB | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Cyrus Gharib's ("Gharib") Petition Requesting Compassionate Release Pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i) (#471), wherein he asks the court to grant him a reduction in sentence and immediate release. The Government filed a response in opposition to the motion (#476), and Gharib filed a reply (#478). The Government filed a supplemental response to the motion (#482) pursuant to a court order requesting additional briefing. United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Gharib's motion for compassionate release. Having considered the pending motion, the Government's response, the reply, the Government's supplemental response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On April 14, 2016, a grand jury in the Eastern District of Texas returned a multi-count Indictment charging Gharib and eleven codefendants with various drug offenses. Gharib was charged in Count 1 with Conspiracy to Distribute and Possess with the Intent to Distribute Anabolic Steroids, in violation of 21 U.S.C. § 846; in Count 2 with Conspiracy to Possess with the Intent to Distribute Gamma Hydroxybutyrate ("GHB"), in violation of 21 U.S.C. § 846; and

in Count 9 with Conspiracy to Distribute and Possess with the Intent to Distribute Marijuana, in

violation of 21 U.S.C. § 846.   On June 22, 2015, Gharib pleaded guilty to Count 2 of the

Indictment pursuant to a non-binding plea agreement.   On February 29, 2016, the court sentenced

him to 151 months' imprisonment, followed by a 3-year term of supervised release.   Gharib did

not appeal his conviction or sentence, but on January 25, 2017, he filed a Motion to Vacate, Set

Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 in which he challenged his sentence on

the basis that he was no longer a career offender in light of an intervening change in the law.   On

February 4, 2019, this court dismissed his motion with prejudice, which dismissal was upheld on

appeal when the United States Court of Appeals for the Fifth Circuit declined to issue a Certificate

of Appealability on October 1, 2019.   Gharib is currently housed at Federal Correctional

Institution Florence ("FCI Florence"), located in Florence, Colorado.   His projected release date

is December 10, 2024.

## II.   Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into

law.   *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.   The Act, in part,

amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to

reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or
> upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the [BOP] to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised release with or
> without conditions that does not exceed the unserved portion of the original term
> of imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    <u>Exhaustion of Administrative Remedies</u>

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that

it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Gharib appears to have exhausted his administrative remedies.  On February 18, 2021, Gharib submitted a request for compassionate release to Warden C. Carter ("Warden Carter"), the warden of the facility where he is housed.  On March 8, 2021, Warden Carter denied Gharib's request, explaining that he did not meet the criteria for a debilitated medical condition

for a reduction in sentence.  Although Gharib complied with the exhaustion requirement before filing his motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to release him from confinement.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release he must establish three criteria.  *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392. Nevertheless, while recognizing that they are not binding, the court finds that the Commission's policy statement contained in § 1B1.13 and the commentary thereto inform its analysis as to what reasons may be deemed sufficiently extraordinary and compelling to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).

### 1.   Medical Condition

In his motion, Gharib, age 46, contends that he is eligible for compassionate release due to his medical problems.  Specifically, Gharib claims:  "Although for the most part, Mr. Gharib is a fairly healthy individual, he does possess a few concerns in relation to his health, which include - hypertension, high cholesterol and growing mobility issues related to his need for shoulder replacement surgery and significant issues associated with the need from knee surgery, as soon as possible."  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

Here, when Gharib was interviewed in connection with his Presentence Investigation Report ("PSR"), prepared on October 21, 2015, and later revised on January 28, 2016, he reported that was diagnosed with a heart murmur at the age of 10 and he had tendon surgery on his right knee in an unspecified year.  Gharib further stated that he did not have any current

physical limitations and his overall physical health was good.   Probation noted that his sister verified his physical health.

According to Gharib's BOP medical records compiled on April 14, 2021, he has been diagnosed as having hyperlipidemia (high cholesterol), hypertension (high blood pressure), post-traumatic osteoarthritis in his shoulders from years of competitive weight lifting, a tear of the ACL (anterior cruciate ligament) and meniscus in his right knee from a sports injury, and cannabis use disorder.   Gharib is prescribed Amlodipine to control his blood pressure, Atorvastatin to manage his cholesterol, and Ibuprofen as needed for pain.   With regard to his high blood pressure, a medical record dated March 2, 2021, indicates that Gharib does not have heart disease stemming from hypertension.   On February 8, 2021, Gharib reported to medical staff that he felt that his blood pressure was well controlled with medication.   His most recent blood pressure readings recorded in his medical records, 112/76 on August 3, 2020, 123/87 on February 13, 2020, 133/92 on February 12, 2020, and 112/78 on February 11, 2020, confirm that his blood pressure is either normal or that he is merely at risk of having high blood pressure.[4]   With regard to high cholesterol, a blood chemistry report dated February 20, 2021, reveals that his cholesterol is only slightly elevated above the normal range.   As for Gharib's assertion that he needs knee surgery "as soon as possible," according to a medical record dated March 25, 2021, he has a complete ACL tear of the right knee along with meniscal tearing.   An outside orthopedic specialist, Jacob Patterson, M.D., recommended arthroscopy and allograft of his right knee to which Gharib previously

---

[4]   According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

agreed.  Nevertheless, Gharib instructed John McGaugh, D.O., to cancel his surgical consult, stating that he did not want to have knee surgery in the BOP and will wait until he releases to pursue this.   Hence, the urgency of this medical problem appears to have diminished since he filed his motion for compassionate release.   Gharib is currently classified as a BOP Medical Care Level 1 inmate.  Pursuant to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

None of Gharib's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release.  *See Thompson*, 984 F.3d at 433.  To the contrary, Gharib's conditions are well controlled with medication.  *See id*.  The court acknowledges that, according to the CDC website, one of Gharib's underlying medical conditions, hypertension, can make him more likely to become severely ill should he contract COVID-19[5]; nonetheless, such a commonplace affliction does not make Gharib's case "extraordinary."  *See id*. at 434.

According to the CDC, 45% of the adults in the United States (108 million) have hypertension, and of those, only about 24% have their condition under control.  In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol.  Due to their prevalence, high blood pressure and high cholesterol cannot be deemed "extraordinary" in order to merit compassionate release.  *See Thompson*, 984 F.3d at 434 (noting that neither

---

[5] In relevant part, the CDC states that adults who have heart conditions (such as hypertension) can be more likely to become severely ill from COVID-19.

hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence).

In this instance, Gharib's BOP records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food service, and his current work assignment is in the laundry.  He is able to provide self-care in the institutional setting and is not limited in his activities of daily living.  Thus, Gharib has failed to establish the existence of medical conditions that would constitute extraordinary and compelling reasons to reduce his sentence.

Gharib's PSR further reveals that he has a history of substance abuse.  Regarding Gharib's history of drug abuse, courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see United States v. Chambliss,* 948 F.3d 691, 694 (5th Cir. 2020).  Here, according to his PSR, Gharib has a history of abusing marijuana, smoking up to 3.5 grams weekly since the age of 22.  His BOP

medical records confirm that Gharib has been diagnosed as having cannabis use disorder.  Yet, he declined residential drug treatment in June 2019.  Moreover, although he successfully completed the residential drug treatment program when confined in federal prison on a prior occasion and participated in a year-long drug treatment aftercare program during a term of supervised release that began in 2006, he had reverted to regular drug use by the time he committed his offense of conviction in 2011 through 2013.  Therefore, granting Gharib early release could facilitate his drug abuse, as he would gain unfettered access to over-the-counter medications and illicit drugs outside the BOP.

## 2.   Other Reasons

Gharib also seeks compassionate release due to his efforts at rehabilitation and the presence of COVID-19 in prison.

### a.   Rehabilitation

Gharib maintains that his post-sentence rehabilitation, evidenced by the courses and programs he has completed, establishes extraordinary and compelling reasons for compassionate release.  Although he provides the court with a list of commendable achievements and goals, Gharib has not presented sufficient grounds for compassionate release.  While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an

11

extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).  Moreover, Gharib declined to participate in the BOP's proffered residential drug treatment program in order to address his cannabis use disorder, a step that could be key to his successful rehabilitation.

### b.    COVID-19

In his motion, Gharib contends that he is a vulnerable individual for contracting COVID-19 according to the CDC guidelines because of his pre-existing medical conditions and other concerns about his health.  Yet, according to his BOP medical records, Gharib tested positive for the virus on February 22, 2021, was placed in isolation, received treatment, and had recovered from the virus by March 5, 2021, more than a month before he filed his motion seeking compassionate release on April 12, 2021.  Moreover, as of August 11, 2021, the figures available at www.bop.gov list 1 inmate (out of a total inmate population of 1,283) and 0 staff member at FCI Florence as having confirmed positive cases of COVID-19, 665 inmates and 54 staff members who have recovered, and 2 inmates who succumbed to the disease.  Thus, it appears that the facility

where Gharib is housed is handling the outbreak appropriately and providing adequate medical care.

Although Gharib expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Gharib, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease

warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Gharib, have already contracted and recovered from the virus.  *See, e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26,

14

2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 to inmates and staff. To date, the BOP has administered approximately 209,675 doses of the vaccine.  According to bop.gov, Federal Correctional Complex Florence, where the defendant is housed, has fully inoculated 1,541 inmates and 409 staff members.  Indeed, according to Gharib's BOP medical records, he received the first dose of the Moderna vaccine on May 13, 2021, and the second dose on June 8, 2021.  In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have already been vaccinated for COVID-19.  *See United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will

15

contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at *3 (S.D. Tex. Apr. 19, 2021).

      C.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.   It is well recognized that "[c]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.  Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (finding that Defendant's argument that the court gave too much weight to his criminal history, "amount[ed] to a mere disagreement with the court's balancing of the § 3553(a) factors, which is not a sufficient ground for reversal").

The nature and circumstances of Gharib's offense of conviction entail his participation in a multi-state drug-trafficking conspiracy spanning from 2011 through 2013.  His role in the offense was to supply coconspirators with GHB from various sources for distribution to others in the Eastern and Northern Districts of Texas.  In his PSR, Gharib was found responsible for distributing 15.89 kilograms of GHB as part of the conspiracy.  In addition, he was held responsible for distributing 293.7 milliliters of anabolic steroids, 14.57 kilograms of marijuana, 496 tablets of lorazepam, and 1.3 grams of methamphetamine (actual).  Gharib supplied and delivered a variety of drugs to various individuals in Texas and Oklahoma including confidential sources in controlled buys, received and sent cash drug proceeds to California and elsewhere, discussed drug trafficking and specific drug transactions in a series of recorded phone calls captured by wire intercept, utilized and directed a courier to pick up drugs in California and bring them to Texas on several occasions, and ordered and received gamma butyrolactone (a controlled substance that is used as a precursor in the manufacture of GHB) from China.  He ultimately agreed to forfeit his interest in 5 vehicles and 5 firearms used in connection with the drug-trafficking conspiracy.

Gharib has an extensive criminal history, including prior convictions for possession with intent to deliver a controlled substance (MDMA) (methylenedioxymethamphetamine) (2), possession of marijuana, possession of a controlled substance (methamphetamine), possession of a controlled substance (GHB), conspiracy to possess with intent to distribute MDMA/Ecstasy, and assault (3).  His PSR shows that he amassed 18 criminal history points, well above the 13 points necessary for him to fall within the highest criminal history category of VI.  In addition, his PSR lists 4 pending charges and 2 prior arrests at the time of sentencing.  Gharib failed to comply with

17

a previous term of supervised release, which was revoked after he was arrested for assault of his girlfriend and burglary of a habitation as well as failing to follow the instructions of his probation officer, engaging in unauthorized travel outside the district, and violating his period of home confinement with electronic monitoring.   Although he has no current prison disciplinary violations, when serving his prior federal sentence, Gharib committed the following infractions: lying or falsifying a statement, being in an unauthorized area, using martial arts/boxing, destroying property, possessing an unauthorized item, and conducting a business without authorization.

In addition, as noted above, Gharib has a history of substance abuse in which he smoked up to 3.5 grams of marijuana weekly since the age of 22 and was also a regular user of hydrocodone, taking up to 15 tablets daily through 2011.   In his PSR, Probation noted that his sister believed that Gharib was addicted to marijuana.   In view of the nature and circumstances of Gharib's offense of conviction, his extensive criminal history, and his history of substance abuse the court cannot conclude that Gharib's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

Furthermore, granting Gharib compassionate release would fail to provide just punishment for his offense and promote respect for the law.   In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.   948 F.3d at 694.   The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after

serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the instant case, Gharib has served approximately 85 months and has credit for good conduct time of approximately 12 months, for a total time served of approximately 97 months. Releasing Gharib after he has served only about 97 months (or approximately 64%) of his 151-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

> D.   Change in the Law Regarding Career Offender Status

Gharib further seeks compassionate release because he is no longer considered a career offender in light of an intervening change in the law. Gharib relies on a series of decisions in support of his contention that, due to a change in the law, he would receive a lesser sentence if sentenced today because a career offender enhancement would not be applied. *See Mathis v. United States*, ___ U.S. ___, 136 S. Ct. 2243, 2257 (2016); *United States v. Tanksley*, 848 F.3d 347, 349-52 (5th Cir. 2017); *United States v. Hinkle*, 832 F.3d 569, 572-77 (5th Cir. 2016). Gharib points out that his prior Texas state convictions for possession with intent to deliver/distribute a controlled substance are no longer viable predicate offenses for application of

the career offender enhancement under the Sentencing Guidelines because they do not qualify as controlled substance offenses.  *See Tanksley*, 848 F.3d at 352.  The holdings in these cases, however, do not set forth a new rule of constitutional law that was made retroactive to cases on collateral review.  *See In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016); *Lopez v. United States*, No. A-17-CA-0099-SS, 2017 WL 1284946, at *2-3 (W.D. Tex. Apr. 5, 2017).

Moreover, although there may have been a change in the law, there has not been a change in the facts.  It remains undisputed that, in 2002, Gharib was convicted of two state drug felonies, possession with intent to deliver a controlled substance, MDMA, committed on November 16, 2000, and possession with intent to distribute a controlled substance, MDMA, committed on April 19, 2001, for which he was sentenced to 5 years in Texas state prison.  In June 2002, Gharib was convicted of conspiracy to possess with intent to distribute and distribution of MDMA/Ecstasy in the United States District Court for the Northern District of Texas for which he was sentenced to 78 months' imprisonment.  His ensuing supervised release was revoked, and he was sentenced to an additional 3 months of imprisonment in 2008.  In addition, along with his federal offense of conviction in 2016 for participation in a drug-trafficking conspiracy, Gharib has a state conviction for possession of marijuana, two convictions for possession of methamphetamine, a conviction for possession of GHB, and three convictions for assault in 2008, 2009, and 2011, respectively.

Nevertheless, Gharib maintains that he is entitled to a sentence reduction because, in the absence of the career offender enhancement, the applicable sentencing range for his offense of conviction would have been 77 to 96 months' imprisonment rather than 151 to 188 months. Gharib overlooks the fact, however, that the statutory maximum sentence was 20 years, and if the lower sentencing range had been deemed insufficient, the sentencing court could have departed

upward or granted an upward variance based on the inadequacy of the calculated sentence.  Such an upward departure or variance could have been warranted due to the failure of the lower sentencing range to account adequately for Gharib's complete criminal history, for which he was assessed 18 criminal history points, 5 points above the score necessary for the highest criminal history category of VI.  In addition, Gharib could have received a sentence enhancement for the supervisory/managerial role he played in the offense by directing the activities of a codefendant who served as a courier of marijuana from California to Texas.  The plea agreement between Gharib and the Government for his offense of conviction makes clear that "the Court is not bound by the[] stipulations" set forth in the agreement.  Both of these circumstances, therefore, could be considered if Gharib were sentenced today.

Furthermore, relief under 18 U.S.C. § 3582(c)(1)(A)(i) is relatively narrow in scope and is primarily premised upon a change in a defendant's personal circumstances, not a change in the law.  *United States v. Ross*, No. 3:08-CR-0167-B-3, 2020 WL 3977113, at *2 (N.D. Tex. July 14, 2020).  "Section 3582 . . . opens the door only slightly for modification of previously imposed sentences for certain specified reasons."  *United States v. Hedgwood*, 934 F.3d 414, 418 (5th Cir.) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)), *cert. denied*, 140 S. Ct. 285 (2019).  A reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) remains discretionary, and "a change in law alone does not rise to the level of extraordinary and compelling circumstances.  If the Court were to hold otherwise, 'every inmate who might receive a reduced sentenced today would be eligible for compassionate release . . . .'"  *Ross*, 2020 WL 3977113, at *2 (quoting *United States v. Cisneros*, No.  99-00107, 2020 WL 3065103, at *3 (D. Haw. June 9, 2020)).  The mere fact that the career offender enhancement under U.S.S.G. § 4B1.1 would not be applied if Gharib were

sentenced today does not automatically entitle him to a reduction in sentence.  *See Spencer v.
United States*, ___ F. Supp. 3d ___, No. 2:11cr30, 2021 WL 713287, at *3 (E.D. Va. Feb. 24,
2021), *aff'd*, 853 F. App'x 833 (4th Cir. 2021).

In this situation, as in *Spencer*, after weighing Gharib's argument that he would no longer
be considered a career offender under the sentencing guidelines, the sentencing factors set forth
in 18 U.S.C. § 3553(a), and the record in this case, the court concludes that Gharib has not shown
extraordinary and compelling reasons for a reduction in sentence.  *See id*.  First, Gharib's offense
conduct was serious—conspiring with others to distribute substantial quantities of GHB as well as
anabolic steroids, marijuana, lorazepam, and methamphetamine.  The conspiracy entailed a large
number of transactions with multiple buyers over several years, as confirmed by surveillance,
witness interviews, and wire intercepts.  *See id*.  Similar to *Spencer*, more significant with respect
to this case are the history and characteristics of the defendant.  *See id*.  Gharib has a lengthy adult
criminal history dating back to 2000.  The PSR describes a variety of criminal convictions, as set
forth above.  Due to his prior convictions and the violation of his supervised release, Gharib, like
the defendant in *Spencer*, had been incarcerated for substantial periods prior to the instant offense.
*See id*.  Upon his release from custody for his previous federal drug-trafficking offense in 2006,
Gharib continued his criminal activities by assaulting women, for which he was convicted of
assault on three separate occasions in 2007, 2008, and 2010, and his supervised release was also
revoked.  Then, in 2011, Gharib embarked on the events leading up to his arrest in 2013 and
ultimate conviction in 2016 for participation in the drug-trafficking conspiracy constituting his
offense of conviction.  Akin to the defendant in *Spencer*, his "criminal history makes clear that
he has a significant pattern of committing crime while out of custody."  *Id*.  As a result, Gharib's

"history and characteristics weigh heavily against a reduction in sentence.  Furthermore, because the Defendant has demonstrated on several occasions that he is likely to return to criminal conduct shortly after his release from incarceration, the court also finds that a reduction in sentence would not 'protect the public from further crimes of the defendant.'"  *Id.* (quoting 18 U.S.C. § 3553(a)(2)(C)).  Hence, based on the foregoing considerations, the court declines to reduce Gharib's sentence based on a change in the law that no longer classifies him as a career offender. *See id.*; *cf. United States v. Shepard*, ___ F.4th ___, No. 20-1622, 2021 WL 3483292, at *2 (8th Cir. Aug. 9, 2021) (finding no abuse of discretion in court's failing to grant a sentence reduction under § 404 of the First Step Act based on the fact that the defendant no longer qualified as a career offender); *Hegwood*, 934 F.3d at 419 (holding that the district court committed no error continuing to apply the career-criminal enhancement when deciding on a proper sentence for the defendant under § 404 of the First Step Act).

Finally, it is well settled that "compassionate release is discretionary, not mandatory." *Chambliss*, 948 F.3d at 693.   In exercising its discretion, the court finds that Gharib has failed to establish that his medical condition, his efforts at rehabilitation, the presence of COVID-19 in prison, or a change in the law regarding his career offender status constitute extraordinary and compelling reasons to reduce his sentence and release him from prison.

III.   Conclusion

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Gharib's track record is

similarly a poor one.  In this instance, there is no reason to believe that Gharib would not revert to his prior drug-dealing and drug-abusing behavior as well as his assaultive conduct if released from prison at this time.

In sum, Gharib has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Gharib's Petition Requesting Compassionate Release Pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i) (#471) is DENIED.

 SIGNED at Beaumont, Texas, this 12th day of August, 2021.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE